# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

GENEVA C. KENNEY,                                        Civil Action No.

        Plaintiff,

v.

HOLDING ACQUISITION COMPANY,
LP d/b/a RIVERS CASINO,

        Defendant.                                        JURY TRIAL DEMANDED

## COMPLAINT

Plaintiff, Geneva C. Kenney, by undersigned counsel files this Complaint and in support alleges the following.

## I.   Jurisdiction

1. The jurisdiction of this Court is invoked pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f)(3), as amended by the Civil Rights Act of 1991, and 42 U.S.C. § 1331. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

## II.   Venue

2. Venue is proper in the Western District of Pennsylvania, in that this action arises out of events that occurred in Allegheny County.

## III.   Administrative Exhaustion

3. Plaintiff has satisfied all the procedural and administrative requirements set forth in Section 706 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5, as amended, and in particular:

    a.   In or about May 2023, Plaintiff filed a timely Complaint with the Pennsylvania Human Relations Commission

(PHRC), which was dual filed with the Equal Employment Opportunity Commission (EEOC).

b. Plaintiff received a Notice of Right to Sue from the EEOC dated June 26, 2024.

c. This action was filed within 90 days of receipt of the EEOC Notice of Right to Sue.

d. It has been at least one year since Plaintiff filed her PHRC complaint, and the PHRC has neither dismissed the complaint nor entered into a conciliation agreement with the parties.

### IV.  Parties

4. Plaintiff, Geneva C. Kenney, is an individual who resides in Allegheny County, Pennsylvania.

5. Defendant, Holding Acquisition Company, LP d/b/a Rivers Casino, is a Limited Partnership with its principal place of business at 777 Casino Drive, Pittsburgh, Pennsylvania 15212.  At all times relevant hereto, Defendant was an "employer" within the meaning of 42 U.S.C. § 2000e(b) and 43 Pa. Cons.Stat.Ann. § 955.

### V.  Factual Background

6. Defendant hired Kenney as a host on June 7, 2022.

7. Kenney's job duties included regular interactions with clients, including those Defendant referred to as "high rollers".

8. During Kenney's employment with Defendant, she was subjected to sexual harassment by Defendant's guests/clients.

9. On multiple occasions, Kenney reported sexual harassment by Defendant's guests/clients to Defendant.

10. On October 9, 2022, a guest who frequented the Rivers Casino abruptly stopped Kenney and, without her consent, initiated a side hug and kissed Kenney on the side of her lip and said, "I kind of snuck that one in there, didn't I?"

11. Kenney immediately contacted her supervisor to report the sexual harassment.

12. On October 21, 2022, Kenney attended a VVIP (Very, Very Important Person) event hosted for high value guests or "high rollers".

13. During the VVIP event, a guest approached Kenney while she was speaking with Bill Bork, Database Marketing Manager, and expressed his frustration that he could not take Kenney to a college football game on her day off.

14. The guest proceeded to kiss Kenney's hand in front of Bork.

15. On October 31, 2022, Kenney announced a drawing for the VVIP guests and of the winners yelled out, "Geneva, you sexy bitch! Did you call my name?" and then proceeded to kiss Kenney on the cheek and ear.

16. Kenney immediately informed Tom Streit, a host supervisor, that this incident made her feel uncomfortable.

17. On November 3, 2022, Kenney was speaking with another host, Victoria Cannon, at the host podium when two guests approached them.

18. When Kenney bent over to pick something up off the floor, one of the guests fondled her buttocks and undergarment.

19. The guest proceeded to shout to the other VVIP guests, "Everybody! Geneva has on a yellow thong! Geneva has on a yellow thong!"

20. Cannon told the guest she couldn't do that, but the guest laughed it off.

21. Kenney and Cannon both submitted written statements to Defendant about the November 3, 2022 incident of sexual harassment.

22. After submitting her written statement, Kenney was outside the Gift Giveaway Center (GGC) to announce the next drawing winner.

23. One of the guests involved berated Kenney in front of hundreds of other guests and Defendant's leadership team because Kenney had filed a report about the other guest's sexually offensive behavior.

24. Kenney submitted a second written statement relating to the second incident of the night.

25. On November 6, 2022, Kenney emailed Streit about her concerns that Defendant's security was not adequately controlling guests for the safety of the employees.

26. Neither Streit, nor anyone else on behalf of Defendant, responded to Kenney's email or concerns.

27. On November 7, 2022, Kenney, accompanied by Cannon, went to Bork's office to voice her concerns about Defendant's failure to protect employees from sexual harassment.

28. Bork told Kenney that Defendant did not need to engage in any follow-up because Kenney had indicated she was fine on the night of the incident.

29. During a weekly meeting on November 10, 2022, marketing events and promotions manager, Ann Spencer, told the employees, "what you do with guests, you bring upon yourself," implying that Kenney and others had invited the sexual harassment or berating from guests.

30.   On November 22, 2022, John Bryner, Kenney's supervisor, met with Kenney and accused her of loitering at the host podium for about 15 minutes on November 16, 2022.

31.   Kenney had been discussing work-related issues with Cannon at the podium.

32.   On November 29, 2022, Kenney went to Defendant's Human Resources office and spoke with and HR representative, Ryan, to again express her concerns of ongoing sexual harassment from guests and the lack of support from Defendant's management.

33.   The HR representative told Kenney that her concerns were outside of HR's purview and did not direct her to any other person or channel to address her concerns.

34.   On December 4, 2022, Kenney was working in the VVIP room when a high-value guest stopped at the host desk where Kenney was kneeling and said "You know what type of boots those are? … Those are 'come fuck me boots.'"

35.   Kenney felt very uncomfortable, immediately reported the incident to Streit and Bryner and completed another written statement.

36.   Kenney also sent Streit a message about the sexually inappropriate guest interaction with her on December 4, 2022.

37.   Streit instructed Kenney to take off on December 5, 2022 and informed her that the guest involved in the most-recent incident would be banned for a year beginning on December 6, 2022.

38. On December 12, 2022, Kenney met with Shannon Redmond, Vice President of Marketing, to discuss her emotional state following the repeated incidents of sexual misconduct by Defendant's guests.

39. Redmond told Kenney that she needed to get comfortable being "out of her norm" and questioned Kenney on how the December 4, 2022 incident related to her being unproductive several days later.

40. On December 27, 2022, Streit informed Kenney that the guest's ban would be lifted on January 5, 2023.

41. Two days later, on December 29, 2022, Defendant terminated Kenney for alleged insubordination.

## Count I
## Title VII – Retaliation

42. Plaintiff incorporates by reference the allegations in Paragraphs 1 to 41 as if fully restated herein.

43. Defendant terminated Plaintiff in retaliation for her complaints of sexual harassment, in violation of Title VII of the Civil Rights Act of 1944, 42 U.S.C. § 2000e, as amended by the Civil Rights Act of 1991.

44. Defendant's actions were taken with malice or reckless indifference to Plaintiff's federally protected rights.

WHEREFORE, Plaintiff demands judgment pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, as amended by the Civil Rights Act of 1991 as follows:

  a. That the Court enter a judgment declaring Defendant's actions to be unlawful and in violation of the Title VII of the Civil Rights Act of 1964, as amended;

  b. That Defendant be ordered to reinstate Plaintiff into the

      position she occupied prior to Defendant's discriminatory actions, together with all benefits incident thereto, including, but not limited to wages, benefits, training and seniority;

c. That Defendant be required to compensate Plaintiff for the full value of wages she would have received had it not been for Defendant's illegal treatment of Plaintiff, with interest, in addition to reimbursement for lost pension, social security, experience, training opportunities and other benefits;

d. That Defendant be required to provide Plaintiff with front pay if the Court determines reinstatement is not feasible;

e. That Defendant be required to compensate Plaintiff for lost benefits, including profit sharing and/or pension benefits until Plaintiff's normal retirement date;

f. That Plaintiff be awarded compensatory damages in an amount to be determined at trial;

g. That Defendant be ordered to pay Plaintiff punitive damages;

h. That Defendant be enjoined from discriminating or retaliating against Plaintiff in any manner prohibited by Title VII;

i. That Plaintiff be awarded against Defendant the costs and expenses of this litigation, including a reasonable attorney's fee; and

j. That Plaintiff be granted such further legal and equitable relief as the Court may deem just and proper.

## Count II
## PHRA – Retaliation

45. Plaintiff incorporates paragraphs 1 through 44 as though the same had been fully set forth at length herein.

46. Defendant terminated Plaintiff in retaliation for her complaints of sexual harassment, in violation of the PHRA, 43 Pa. Conns. Stat.Ann. § 955(a) *et seq*.

47. As a direct result of Defendant's retaliatory actions in violation of the PHRA, Plaintiff has lost wages and other economic benefits of her employment with Defendant, in addition to suffering extreme emotional distress, depression, and like conditions.

WHEREFORE, Plaintiff requests the following:

a. That the Court enter a judgment declaring Defendant's actions to be unlawful and in violation of the Pennsylvania Human Relations Act;

b. That Defendant be ordered to reinstate Plaintiff into the position she occupied prior to Defendant's discriminatory actions, together with all benefits incident thereto, including, but not limited to wages, benefits, training and seniority;

c. That Defendant be required to compensate Plaintiff for the full value of wages she would have received had it not been for Defendant's illegal treatment of Plaintiff, with interest, in addition to reimbursement for lost pension, social security, experience, training opportunities and other benefits;

d. That Defendant be required to provide Plaintiff with front pay if the Court determines reinstatement is not feasible;

e. That Defendant be required to compensate Plaintiff for lost benefits, including profit sharing and/or pension benefits until Plaintiff's normal retirement date;

f. That Plaintiff be awarded compensatory damages in an amount to be determined at trial;

g. That Defendant be enjoined from discriminating against Plaintiff in any manner prohibited by the Pennsylvania Human Relations Act;

h. That Plaintiff be awarded against Defendant the costs and expenses of this litigation, including a reasonable

        attorney's fee; and

i.    That Plaintiff be granted such further legal and equitable relief as the Court may deem just and proper.

        Respectfully submitted:

        **RAMAGE LYKOS, LLC**

        */s/ Nikki Velisaris Lykos*
        Nikki Velisaris Lykos
        PA I.D. No. 204813

        Colleen E. Ramage
        PA I.D. No. 64413

        525 William Penn Place
        28th Floor
        Pittsburgh, PA  15219
        (412) 325-7700 (phone)
        (412) 325-7755 (fax)
        nlykos@ramagelykos.law
        cramage@ramagelykos.law

        Attorneys for Plaintiff